# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:23-cv-00258 |
| | ) | |
| v. | ) | |
| | ) | **CONSENT DECREE** |
| CITY OF CHATTANOOGA, TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America alleges as follows:

## I. BACKGROUND

1.      The United States brings this action for declaratory and injunctive relief, monetary damages, and a civil penalty against the City of Chattanooga, Tennessee (the "City" or the "Defendant"), under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. §§ 3601-3631, and Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131-12134, and Title II's implementing regulation, 28 C.F.R. Part 35.  The complaint alleges that the City discriminated on the basis of disability[1] by refusing to allow four people with mental disabilities to reside together in a single-family home in the City under the same terms and conditions as residents without disabilities.  The United States alleges that through its actions and implementation of its zoning

---

[1]  Although the FHA uses the term "handicap" instead of "disability," the words have the same legal meaning.  *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).  These equivalent terms refer to the definitions included in the Fair Housing Act, *see* 42 U.S.C. § 3602(h); 24 C.F.R. § 100.201; and in the Americans with Disabilities Act, *see* 42 U.S.C. § 12102(1); 28 C.F.R. § 35.104.

ordinance, the City is alleged to have engaged in a discriminatory housing practice and denied

rights granted by the FHA and the ADA, and such denial raises an issue of general public

importance.

2.      As described in the United States' Complaint, this case concerns the efforts of

Quality Lifestyle Service, Inc. ("Quality Lifestyle"), a registered Tennessee 501(c)(3) non-profit

corporation, beginning in June 2020 to provide housing (through a "Housing Initiative" or

"Initiative") to four unrelated persons with mental illness who would have lived together at 1104

South Greenwood Avenue, a four-bedroom home in an R-1 zoning district in the City ("subject

property").  Tennessee law, T.C.A. §§ 13-24-101-104, removes zoning obstacles preventing

persons with mental and physical disabilities from obtaining equal access to housing in

Tennessee. T.C.A. § 13-24-103 states that this law "takes precedence over any provision in any

zoning law or ordinance in Tennessee to the contrary."  The City Zoning Ordinance defines

single-family residences to include any home in which eight (8) or fewer unrelated persons with

disabilities reside and may include three (3) additional persons acting as support staff or

guardians, who need not be related to each other in a single-family zoned property pursuant to

T.C.A. § 13-24-102.

3.      Ursula Edwards is the Chief Executive Officer and owner of Quality Lifestyle,

which provides property management services to support housing for persons with disabilities.

During relevant times, a private person that was not a nonprofit entity owned the subject property

and Quality Lifestyle Services was operating under a lease agreement for the subject property to

provide property management services in conjunction with the Mental Health Cooperative of

Chattanooga and Blue Cross Blue Shield of Tennessee.

4.    The Initiative was a collaboration among a number of community stakeholders, including the Hamilton County FUSE program, who sought to provide housing to persons with disabilities in the City.

5.    As described in the United States' Complaint, it is alleged that the City took steps, including imposing the requirements that Quality Lifestyle obtain a special permit, that thwarted Quality Lifestyle's efforts to provide housing for persons with disabilities through the Initiative. As a result, Ms. Edwards and the Housing Initiative participants were unable to provide housing to persons with disabilities at the subject property.

6.    Regarding the FHA, the United States alleges that the City's actions described above constitute violations of the FHA §§ 3601-3619; a denial of rights to a group of persons that raises an issue of general public importance, in violation of the Fair Housing Act, 42 U.S.C. §§ 3614(a); and a discriminatory housing practice involving the legality of a state or local zoning or other land use law or ordinance, in violation of 42 U.S.C. § 3614(b).

7.    Regarding the ADA, the United States alleges that the City's actions described above constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35; and interfere with an individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA, in violation of Title V of the ADA, 42 U.S.C. § 12203(b).

8.    The City has denied that it discriminated against Quality Lifestyle in that the City initially determined that the proposal did not meet the safe harbor of T.C.A. § 13-21-101.  As a result, the special permit for operation of a group home was denied during a hearing on November 4, 2020.  Although the City refused to allow Quality Lifestyle to open and operate the

3

home at the subject property, it has allowed residences for persons with disabilities managed by Quality Lifestyle to operate in other locations in the City.

9.      This Consent Decree (the "Decree") is intended to effectuate a comprehensive settlement of the United States' claims.  To avoid litigation, the United States and the City (collectively, the "Parties") have jointly and voluntarily agreed to resolve the United States' claims, as indicated by the signatures below.  By entering into this Decree, the City does not admit that it violated the FHA or the ADA.  This Decree is not an adverse finding, ruling, proceeding, or judgment against the City.

Therefore, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## II.  JURISDICTION AND VENUE

10.     The Parties agree that this Court has jurisdiction over this action and may grant the relief sought herein under 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. § 3614(a); 42 U.S.C. § 3614(b); 42 U.S.C. §§ 12133 and 12134; and 28 U.S.C. §§ 2201 and 2202.

11.     The Parties agree that venue is proper under 28 U.S.C. § 1391, because the events or omissions giving rise to the claims alleged herein occurred in the Eastern District of Tennessee and because the Defendant and the property at issue in this action are located there.

## III.  EFFECTIVE DATE

12.     The "effective date of the Decree" is the date on which the Court enters this Consent Decree.

## IV.  GENERAL INJUNCTIONS AND NONDISCRIMINATION PROVISIONS

13.     When used in this Decree, the terms "Defendant" and "City" include the City of City of Chattanooga, the Chattanooga Zoning Board of Appeals, the City's employees, elected

4

and appointed officials, officers, agents, successors, and persons or entities acting in concert or participation with them.

14.     The City, its agents, employees, successors, and all persons in active concert or participation with it, shall not:

    a.   Discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any person because of a disability of that person, of any person residing in or intending to reside in a dwelling, or any person associated with such person;

    b.   Discriminate in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of disability;

    c.   Adopt, maintain, enforce, or implement any zoning or land use laws, regulations, policies, procedures, or practices that discriminate on the basis of disability;

    d.   Refuse to make reasonable accommodation[2] in rules, policies, practices, or services when such accommodation may be necessary to afford a person or persons with disabilities an equal opportunity to use and enjoy a dwelling;

    e.   Coerce, intimidate, threaten, or interfere with or retaliate against persons

---

[2]  In this Decree, "reasonable accommodation" refers to accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling, within the meaning of 42 U.S.C. § 3604(f); and "reasonable modifications" as used in the implementing regulation for Title II of the ADA at 28 C.F.R. § 25.130(b)(7).

5

with disabilities in the exercise or enjoyment of, or on account of such persons having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA or the ADA;

  f. Exclude persons with disabilities from participation in or deny the benefits of the City's services, programs, or activities; or

  g. Discriminate on the basis of disability on the face of its regulations; or in making land use decisions regarding, or plans to create, operate, or modify, programs, activities, or facilities that provide services for individuals with disabilities. Such non-discrimination includes making reasonable modifications to policies, practices, or procedures when such modifications are necessary to afford individuals with disabilities an equal opportunity to use and enjoy a facility, unless such modification would fundamentally alter the nature of the land use.

## V. SPECIFIC INJUNCTIVE RELIEF

15. Within sixty (60) days of the effective date of the Decree, the City will submit proposed amendments to its zoning ordinance as required by this Decree to the United States for approval. The United States will not unreasonably delay or deny approval. Within sixty (60) days of receiving the United States' written approval of those amendments, the City will enact as ordinances the approved policies and provisions, and will administer related procedures. The amended zoning ordinance and related procedures shall require explicitly that:

  a. persons with disabilities shall not be denied housing opportunities on the basis of disability, nor shall they be excluded from participation in or denied the benefits of,

the City's services, programs, or activities, or otherwise be subjected to discrimination through the administration of the City's land development or zoning practices;

b. housing providers for persons with disabilities seeking approval for uses allowed by right under Tennessee state law and/or local land use or zoning laws are not subjected to needless or unduly burdensome administrative hurdles, including the requirement to obtain special use permits or other approvals;

c. all residences comprised of related or unrelated persons with disabilities shall operate as of right in all residential zoning districts in the City to the same extent and under the same terms and conditions as residences comprised of non-disabled persons;

d. the provisions required by this Section shall protect residences that house person(s) with disabilities regardless of whether they operate on a commercial basis or on a non-profit basis;

e. related and/or unrelated persons with disabilities shall be included in the City's Zoning Ordinance definition of family to no lesser extent than individuals without disabilities;

f. the protections afforded to housing for persons with disabilities under Tenn. Code Ann. § 13-24-101-104 apply to all residences, whether temporary or permanent, including transitional and other forms of supported housing; and

g. the provisions required by this Section shall protect persons with disabilities who have mental illness, intellectual disabilities, or emotional disabilities to the same extent that it protects persons with disabilities or conditions other than mental illness, intellectual disabilities, or emotional disabilities.

7

16.    Within sixty (60) days of the effective date of the Decree, the City shall amend the City's Reasonable Accommodation Policy to clarify that the City's implementation of its zoning and land use ordinances, services, and programs are covered by the Reasonable Accommodation Policy.

17.    The City shall not limit the housing rights of people with disabilities or enact ordinances that are inconsistent with this Decree, the FHA, or the ADA.

18.    The City shall not otherwise modify its Zoning Regulations, Reasonable Accommodation policy, or any other ordinance, rule, or policy during the term of this Decree, in a manner such that the modification narrows, reduces, or limits the rights of persons with disabilities.

19.    Beginning within thirty (30) days of the United States' approval of the City's revised Reasonable Accommodation Policy, and continuing throughout the duration of this Decree, the Defendant shall continuously post and publicly display its revised Reasonable Accommodation Policy on the City's website and at the offices of the Defendant in which announcements or vacancies are posted.

## VI.  MONETARY RELIEF

20.    The Defendant shall pay the sum of Thirty Two Thousand Six Hundred and 00/100 dollars ($32,600.00) within thirty (30) days of the effective date of the Decree by sending a certified check or bank check to the attention of counsel for the United States, payable to Quality Lifestyle Service, Inc., by overnight delivery to the street address to be provided by the United States on or before the effective date of this Decree.

21.     To receive this payment, Ms. Edwards must execute a release on behalf of Quality Lifestyle, in the form of **Attachment A** signifying that the payment constitutes full settlement of any claims the payee may have relating to the subject matter of this action. Counsel for the United States shall obtain the signed release form and provide it to counsel for the Defendant upon receipt of the check before tendering the check to Quality Lifestyle.

## VII.  CIVIL PENALTY

22.     Within thirty (30) days of the effective date of the Decree, the Defendant shall pay Five Thousand and 00/100 dollars ($5,000.00) to the United States Treasury as a civil penalty under 42 U.S.C. § 3614(d)(1)(C)(i). The payment shall be in the form of an electronic fund transfer pursuant to written instructions to be provided by the United States on or before the effective date of this Decree.

23.     In the event that the Defendant, its agents, or its employees engage in any future violation(s) of the FHA, as determined by a court of competent jurisdiction at the request of the United States, against persons with disabilities or perceived disabilities during the term of this Decree, such violation(s) shall constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii).

## VIII.  RECORD-KEEPING & REPORTING

24.     The Defendant shall continue to keep written records of each disability-based request for reasonable accommodation it receives relating to housing until the dismissal of this Decree as set forth in Paragraph 32. These records shall include: (A) the name, address, and telephone number of the person or entity making the request; (B) the date on which the request was received; (C) the nature of the request; (D) whether the request was granted or denied; (E) if the request was denied, all documents showing or discussing the reason(s) for the denial; and (F)

copies of all documents, including audio and video recordings received or created by the City pertaining to each reasonable accommodation for housing request and its disposition.

25.    The Defendant shall send all documents, notices, and other communications required by the Decree to be sent to the United States to:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, N.W. (4CON), Washington, D.C. 20530, Attn:  DJ #175-70-160.  The Defendant shall send all documents, notices, and communications required by or relating to this Decree during its term by regular United States mail and electronic mail to lori.wagner@usdoj.gov.

26.    The Defendant shall prepare semi-annual reports until the dismissal of this Decree as set forth in Paragraph 32 in a format provided by the United States that detail the actions it has taken to fulfill its obligations under the Decree.  The Defendant shall submit its first Compliance Report to the United States no later than six (6) months after the effective date of the Decree, and subsequent reports every six months thereafter, for the duration of the Decree, except that the final report shall be delivered to the United States no fewer than sixty (60) days prior to the date upon which the Decree is scheduled to expire.

27.    The Defendant shall include the following information in the Compliance Reports:

a. the name, address, and title of the employee or official serving as the designated person referred to in Paragraph 31;

b. copies of the training certification and acknowledgment forms signed since the last report;

c. copies of any written complaint received since the last report alleging discrimination by Defendant with respect to any matter subject to the injunctions in part III, above, including a description of any action taken in response to the complaint and copies of all pertinent

documents, such as a copy of the complaint, any documents filed with the complaint, and any written response to the complaint made by Defendant;

d. copies of each zoning, land-use, or building application or request for reasonable accommodation related to housing for disabled persons (including those for building permits, special exceptions, variances, or other uses not provided for) for which Defendant has made a determination since it submitted the previous report, indicating: (1) the date of the application; (2) the applicant's name; (3) the applicant's current residential street address; (4) the street address of the proposed housing; (5) the disposition of the application, including any appeals, indicating reasons for that outcome; and (6) if a vote was taken, how each participant voted and the date of the vote; and

e. all documents presented in support of oral testimony offered by any member of the public at any hearing held with respect to each such application or request referred to in Paragraph 27(d) above that is denied by Defendant.

28.    The Defendant shall maintain all records relating to implementation of and compliance with all provisions of the Decree, including, but not limited to, all records related to zoning, land-use, or building applications or requests for reasonable accommodation related to housing for disabled persons. The United States shall have the opportunity to inspect and copy any records maintained as required by the Decree after giving reasonable notice to the Defendant.

29.    Nothing in this Decree shall be interpreted to require persons with disabilities or providers of housing for persons with disabilities acting or operating in accordance with applicable zoning, licensing, and/or land use laws and practices, to seek permission from the Defendant to begin or continue such action or operation.

## IX.  FAIR HOUSING ACT AND AMERICANS WITH DISABILITIES ACT TRAINING

30.      The Defendant shall, no later than ninety (90) days from the effective date of the Decree, provide training in the requirements of the Decree, the Fair Housing Act, and the Americans with Disabilities Act to:  the members and staff of the Board of Zoning Appeals; the Building Inspector and staff of the City's Building Department; and the members of the City Council and their respective staff who have direct or supervisory authority in connection with building, zoning, and land use functions in the City.  The training required by this Section shall include information on the rights of all classes protected under the Fair Housing Act and the ADA, including the rights of persons with disabilities.

a.  The training shall be conducted by a qualified third party, subject to the approval of the United States.  The trainer shall be unconnected to the Defendant or its employees, officials, agents, or counsel, and any expenses associated with this training shall be borne by the Defendant.  The City shall provide the United States with a curriculum vitae that describes the proposed trainer's experience and skills relating to Fair Housing Act and ADA training, and a detailed proposed outline of the content of the training program, including proposed handouts and power point slides, at least ten (10) business days before the training required by this Section for its review and approval, which the United States shall not unreasonably deny.

b.  As part of the training, each person trained shall be given a copy of the Decree, the FHA, and the ADA.

c.  The Defendant shall, no later than ten (10) days after training, provide to the United States certifications executed by each person trained confirming his or her attendance and date of training.  The certifications shall be in the form of **Attachment B**.

12

d.  For each person commencing employment or service in any of the positions listed in this part, the Defendant shall, no later than ten (10) days after such commencement or service, give each such person a copy of the Decree and the Fair Housing Act and shall obtain each such person's signed a certification acknowledging that he or she has received and read the Decree and the Act.  This certification shall be in the form of **Attachment C**.

## X.  COMPLIANCE COORDINATOR(S)

31.     No later than ten (10) days after the effective date of this Decree, the Defendant shall designate an employee(s) or official(s) of the City of Chattanooga to receive complaints against the City of alleged housing discrimination involving housing for persons with disabilities, and to coordinate compliance with this Decree.  The designated person(s) shall maintain copies of the Decree, the HUD complaint form, and the pamphlet entitled "Are You a Victim of Housing Discrimination?" (HUD official forms 903 and 903.1, respectively); continuously post these materials on the City's website, and make these materials freely available to anyone upon request and without charge, including all persons making housing discrimination complaints to Defendant.  The Defendant shall notify the United States in writing of the name, address, and title of the designated person(s) no later than ten (10) days after the effective date of the Decree.

## XI.  DURATION OF DECREE AND TERMINATION OF LEGAL ACTION

32.     The Decree shall remain in effect for a period of three (3) years after its effective date.  The Court shall retain jurisdiction for the duration of this Decree to enforce the terms of the Decree, after which time the case shall be dismissed with prejudice.  Prior to the expiration of the Decree's term, and upon reasonable notice to the Defendant, and after good faith efforts among the parties to avoid seeking Court intervention, the United States may move the Court to

13

extend the duration of the Decree in the interests of justice, or for other good cause, including on the basis that the Defendant has failed to comply with a provision of the Decree.

33.     The parties agree to work cooperatively with one another in good faith to resolve informally any differences regarding interpretation of, and compliance with, the Decree prior to bringing such matters to the Court for resolution.  However, in the event of a failure by Defendant to perform in a timely manner any act required by this Decree or otherwise to act in violation of any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees that may have been occasioned by the violation or failure to perform.

34.     The parties shall have the right to seek from the Court modifications of the Decree, provided that any request for a modification has been preceded by good faith negotiations between the parties.  The parties may agree in writing to modify the deadlines established by this Decree without Court approval.

## XII.  COSTS OF LITIGATION

35.     Each party to this litigation will bear its own costs and attorney's fees associated with this litigation.

## XIII. RELEASE OF LITIGATION HOLDS

36.     To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matter described above, the party is no longer required to maintain such a litigation hold.  Nothing in this Paragraph relieves either party of any other obligations imposed by this Decree.

14

**It is hereby ORDERED, ADJUDGED, and DECREED this _____ day of _____ 2023.**

_____
The Honorable
United States District Judge

**FOR THE UNITED STATES:**

FRANCIS M. HAMILTON III
United States Attorney

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

By: */s/ Ben D. Cunningham*
Assistant United States Attorney
United States Attorney's Office
Eastern District of Tennessee
800 Market Street, Ste. 211
Knoxville, Tennessee 37902
Phone: (865) 225-1662
E-mail: Ben.Cunningham@usdoj.gov

*/s/ Lori K. Wagner*
CARRIE PAGNUCCO
Chief, Housing and Civil Enforcement
Section
MICHAEL S. MAURER
Deputy Chief
LORI K. WAGNER
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Phone: (202) 305-3107
Fax: (202) 514-1116
E-mail: Lori.Wagner@usdoj.gov

**FOR THE CITY OF CHATTANOOGA:**

*/s/ Phillip A. Noblett*
PHILLIP A. NOBLETT
City Attorney
KATHRYN MCDONALD
Assistant City Attorney
City of Chattanooga
Office of the City Attorney
100 East 11th Street, Suite 200
Chattanooga, TN 37402
Phone: (423) 643-8250
Fax: (423) 643-8255
E-mail: pnoblett@chattanooga.gov

15

**Attachment A**

**GENERAL RELEASE IN FULL AND FINAL SETTLEMENT OF CLAIMS**

Relating to the Consent Decree
*United States* v. *City of Chattanooga, TN,* Civil Action No. [1:23-cv-00258]
filed _____, 2023

In consideration of the parties' agreement to the terms of the Consent Decree entered by the Court in *United States v. City of Chattanooga*, Civil Action No. [1:23-cv-00258], and the City of Chattanooga's ("City's") payment of the sum of <u>Thirty Two Thousand, Six Hundred and 0/100</u> dollars ($32,600.00) to Quality Lifestyle Service, Inc, I, Ursula Edwards, my heirs and assigns, hereby release the City and its successors, insurers, agents and assigns, from any and all liability for any existing pending or potential claims or causes of action, legal or equitable, that I or Quality Lifestyle Service, Inc. may have against the City arising out of the allegations raised in this action or any related action or complaint pending before HUD involving the City based on this Consent Decree.

It is understood and agreed that this Agreement is the compromise of a disputed claim, that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released. The parties further understand that this Agreement does not include any payment for attorney's fees or discretionary costs by the City, and all parties waive any claim for attorney's fees or discretionary costs, as part of this settlement and compromise and release the City from such liability. I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

16

In witness whereof, with the intent to be legally bound hereby, I have set my hand and seal this _____ day of _____, 2023.


_____
Ursula D. Edwards
Chief Executive Officer
For Quality Lifestyle Service, Inc.
113 North Moore Road
Chattanooga, TN 37411

17

**Attachment B**

## CERTIFICATION OF ATTENDANCE AT
## FAIR HOUSING ACT &
## AMERICANS WITH DISABILITIES ACT TRAINING

On _____, I attended training on the Consent Decree entered by the federal

district court in *United States* v. *City of Chattanooga*, Civil No. [1:23-cv-00258] (E.D. Tenn.)

on the federal Fair Housing Act, and the Americans with Disabilities Act. I have had all of

my questions concerning the Consent Decree, the Fair Housing Act, and the Americans with

Disabilities Act answered to my satisfaction.


_____
Signature


_____
Print name


_____
Job title


_____
Date

18

**Attachment C**

**ACKNOWLEDGMENT OF RECEIPT OF COPIES OF**
**CONSENT DECREE**
**AND FAIR HOUSING ACT**

On _____, I received copies of and have read the Consent Decree entered

by the federal district court in *United States* v. *City of Chattanooga,* Civil No.[1:23-cv-00258]

(E.D. Tenn.) on _____, and the federal Fair Housing Act. I have had all

of my questions concerning the Consent Decree and the Fair Housing Act answered to

my satisfaction.


_____
Signature


_____
Print name


_____
Job title


_____
Date


19